IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

ALLSTATE VEHICLE AND PROPERTY
INSURANCE COMPANY, and
ALLSTATE INDEMNITY COMPANY,

       Plaintiffs,

                                  Civil Action No. 1:21CV100
v.                                (Judge Keeley)

DONNA L. PIXLER-DAVIS, DELBERT L. DAVIS,
ALBERT CLAUDIO, JR., Executor of the
Estate of Pamela A. Ciuni,
ALBERT CLAUDIO, III, and
STEVEN A. CIUNI, Parent and Next Friend
of A.C.C., a minor,

       Defendants.

## MEMORANDUM OPINION AND ORDER
### GRANTING SUMMARY JUDGMENT IN FAVOR OF THE PLAINTIFFS

Pending before the Court is the motion for summary judgment filed by the plaintiffs, Allstate Vehicle and Property Insurance Company and Allstate Indemnity Company (collectively, "Allstate") (Dkt. No. 30). Also pending is the cross-motion for summary judgment filed by the defendants, Albert Claudio, Jr. ("Claudio, Jr."), Albert Claudio, III ("Claudio III"), and Steven A. Ciuni (collectively, "the Claudio defendants") (Dkt. No. 32).[1] For the reasons that follow, the Court **GRANTS** the plaintiffs' motion and **DENIES** the defendants' cross-motion.

---

[1] In the alternative, the Claudio defendants moved the Court to abstain from exercising jurisdiction (Dkt. No. 32).

ALLSTATE VEHICLE & PROP. INS.                               1:21CV100
CO. v. PIXLER-DAVIS

### MEMORANDUM OPINION AND ORDER
### GRANTING SUMMARY JUDGMENT IN FAVOR OF THE PLAINTFFS

### I. Background

This case arises out of a motor vehicle accident in Westover, West Virginia, that resulted in the death of a pedestrian, Pamela A. Ciuni ("Ciuni"). Subsequently, Claudio, Jr., filed a wrongful death lawsuit in state court against Donna L. Pixler-Davis ("Pixler-Davis") and Delbert Davis ("Davis") (collectively, "the Davises"), the owners of the property on which the accident occurred. Claudio, III, and Steven A. Ciuni also sued the Davises for damages arising out of Ciuni's death.

For purposes of summary judgment, courts "view the evidence in the light most favorable to the non-moving party" and refrain from "weighing the evidence or making credibility determinations." Lee v. Town of Seaboard, 863 F.3d 323, 327 (4th Cir. 2017) (quoting Jacobs v. N.C. Admin. Off. of the Cts., 780 F.3d 562, 568-69 (4th Cir. 2015)). Here, however, the underlying facts are largely undisputed.

Near the end of May 2020, prior to the motor vehicle accident, Pixler-Davis orally agreed to allow Duda's Farm, Inc. ("Duda's") to operate a seasonal produce stand on her property located at 707 Fairmont Avenue, Morgantown, West Virginia (Dkt. No. 33-1 at 52-

2

ALLSTATE VEHICLE & PROP. INS.                                    1:21CV100
CO. v. PIXLER-DAVIS

### MEMORANDUM OPINION AND ORDER
### GRANTING SUMMARY JUDGMENT IN FAVOR OF THE PLAINTFFS

53). In exchange for the right to operate the stand, Duda's orally
agreed to pay Pixler-Davis $400 per month. Id. Shortly thereafter,
Duda's began operating its stand on the property. Id. at 8.

On August 10, 2020, Jerrey L. Hoyt ("Hoyt") and the decedent,
Ciuni, separately drove to Duda's produce stand (Dkt. No. 1 at ¶¶
18, 21). Ciuni was accompanied by her grandson, A.C.C., a minor,
and Claudio III. Id. at ¶ 21. After Hoyt made his purchase and as
he was attempting to leave, he crashed his car into the stand,
seriously injuring Ciuni. Id. Later that day, Ciuni died from the
injuries she sustained. Id. at ¶ 20. At the time of the accident
and her death, the Davises were insured under three (3) separate
Allstate insurance policies, specifically two House and Home
Policies and one Umbrella Policy (Dkt. Nos. 30-5, 30-6, 30-7).

Following the accident, the defendants filed three lawsuits
in state court. First, Claudio, Jr., Ciuni's long-time domestic
partner and the executor of her estate, filed a wrongful death
suit alleging that Duda's, Pixler-Davis, and Hoyt were negligent
in their actions leading up to Ciuni's death (Dkt. No. 1-1). And
because Claudio III, Ciuni's "equitably adopted son," had
witnessed the accident, he too sued Duda's, Pixler-Davis, and Hoyt,

ALLSTATE VEHICLE & PROP. INS.                    1:21CV100
CO. v. PIXLER-DAVIS

### MEMORANDUM OPINION AND ORDER
### GRANTING SUMMARY JUDGMENT IN FAVOR OF THE PLAINTFFS

alleging negligent infliction of emotional distress (Dkt. No. 1-2). Finally, because A.C.C., Ciuni's grandson, also had witnessed the accident, Steven A. Ciuni, A.C.C.'s father, filed suit, as parent and next friend of A.C.C., against Duda's, Pixler-Davis, and Hoyt, asserting negligent infliction of emotional distress (Dkt. No. 1-3).

After the filing of these lawsuits against the Davises, Allstate sought a declaratory judgment in this Court that the three (3) insurance policies owned by the Davises do not provide coverage for the defense or indemnification of the claims asserted in the state court lawsuits (Dkt. No. 1). One of the House and Home Policies at issue (Policy No. 952 746 402) covered the Davises' property located at 707 Fairmont Road, Morgantown, West Virginia 26505, where the accident occurred. The other House and Home Policy (Policy No. 977 792 910) covered property owned by the Davises located at 508 Wheeling Street, Westover, West Virginia 26501. In general, both House and Home Policies provide family liability protection and guest medical protection, but they also include several exclusions relevant to the coverage questions raised here. The third policy, the Umbrella Policy (Policy No. 952 961 488)

4

ALLSTATE VEHICLE & PROP. INS.                                    1:21CV100
CO. v. PIXLER-DAVIS

### MEMORANDUM OPINION AND ORDER
### GRANTING SUMMARY JUDGMENT IN FAVOR OF THE PLAINTFFS

issued by Allstate Indemnity Company, generally provides coverage, subject to certain exclusions, above the limits in the House and Home Policies, and "drops down" to provide primary coverage in specific instances.

In its motion for summary judgment, Allstate argues that these three (3) policies exclude coverage for losses resulting from the August 10, 2020 motor vehicle accident because the Davises were engaged in business activity (Dkt. No. 31). In their cross-motion, the Claudio defendants argue that Allstate's policies are ambiguous and, under West Virginia law, should be construed in their favor (Dkt. No. 32). The Davises make a similar argument (Dkt. No. 33). The motions are now fully briefed and ripe for decision.

### II. Jurisdiction

Before taking up the parties' coverage dispute, the Court first addresses an alternative argument raised by the Claudio defendants, that the Court should either abstain from exercising its jurisdiction in this case or issue a stay pending the outcome of the state court litigation (Dkt. No. 32 at 20). Allstate urges the Court to decide the coverage issues (Dkt. No. 34 at 2-6).

5

ALLSTATE VEHICLE & PROP. INS.                           1:21CV100
CO. v. PIXLER-DAVIS

### MEMORANDUM OPINION AND ORDER
### GRANTING SUMMARY JUDGMENT IN FAVOR OF THE PLAINTFFS

The Declaratory Judgment Act authorizes district courts to "declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201. In the Fourth Circuit, "a declaratory judgment action is appropriate 'when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" Centennial Life Ins. Co. v. Poston, 88 F.3d 255, 256 (4th Cir. 1996) (citing Aetna Cas. & Sur. Co. v. Quarles, 92 F.2d 321, 324 (4th Cir. 1937) (internal citation omitted)).

In this regard, district courts should consider four factors in considering whether to exercise jurisdiction:

> (i) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts; (ii) whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending; [ ](iii) whether permitting the federal action to go forward would result in unnecessary "entanglement" between the federal and state court systems, because of the presence of "overlapping issues of fact or law"[; and (iv) ] whether the declaratory judgment action is being used merely as a

ALLSTATE VEHICLE & PROP. INS.                          1:21CV100
CO. v. PIXLER-DAVIS

### MEMORANDUM OPINION AND ORDER
### GRANTING SUMMARY JUDGMENT IN FAVOR OF THE PLAINTFFS

> device for "procedural fencing"—that is, "to
> provide another forum in a race for res
> judicata" or "to achiev[e] a federal hearing
> in a case otherwise not removable."

Poston, 88 F.3d at 257 (citing Nautilus Ins. Co. v. Winchester

Homes, Inc., 15 F.3d 371, 377 (4th Cir. 1994), rev'd on other

grounds, 88 F.3d 255 (4th Cir. 1996)) (alterations in original).

Here, all of the Nautilus factors favor the Court's exercise

of its jurisdiction. In the first place, West Virginia has a weak

interest in deciding this case as "the contractual coverage issue

will not be decided by the state tort case, and [Allstate] is not

a party to the state case." Penn-America Ins. Co. v. Coffey, 368

F.3d 409, 414 (4th Cir. 2004). "Moreover, . . . the State's

interest is 'not particularly significant' where," as here, "any

state law issues are standard and 'unlikely to break new ground.'"

Id.

As to the final three factors, the critical point is that the

coverage issues are not part of the state actions. Consequently,

a decision here would not unnecessarily entangle the Court in the

pending state proceedings. It also would be more efficient to

decide the coverage question than to defer that decision until the

ALLSTATE VEHICLE & PROP. INS.                           1:21CV100
CO. v. PIXLER-DAVIS

### MEMORANDUM OPINION AND ORDER
### GRANTING SUMMARY JUDGMENT IN FAVOR OF THE PLAINTFFS

conclusion of the state litigation. Nor would a decision by this Court encourage procedural fencing. The Court's exercise of jurisdiction over this matter therefore is proper.

### III. Standard of Review

Under Fed. R. Civ. P. 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party," and "[a] fact is material if it might affect the outcome of the suit under the governing law." Jacobs, 780 F.3d at 568 (quoting 10A Charles A. Wright et al., Federal Practice & Procedure § 2728 (3d ed. 1998)).

A motion for summary judgment should be granted if the nonmoving party fails to make a showing sufficient to establish the existence of an essential element of his claim or defense upon which he bears the burden of proof. Celotex v. Catrett, 477 U.S. 317, 323 (1986). The existence of a mere scintilla of evidence supporting the nonmovant's position is insufficient to create a genuine issue; rather, there must be evidence on which a jury could

8

ALLSTATE VEHICLE & PROP. INS.                                    1:21CV100
CO. v. PIXLER-DAVIS

### MEMORANDUM OPINION AND ORDER
### GRANTING SUMMARY JUDGMENT IN FAVOR OF THE PLAINTFFS

reasonably find for the nonmovant. Anderson v. Liberty Lobby, 477

U.S. 242, 252 (1986).

### IV. Discussion

Under West Virginia law,[2] liability insurance policies impose

two main duties on the part of the insurer, the duty to defend and

the duty to indemnify. See, e.g., Aetna Cas. & Sur. Co. v. Pitrolo,

342 S.E.2d 156, 160 (W. Va. 1986); Donnelly v. Transp. Ins. Co.,

589 F.2d 761, 765 (4th Cir. 1978). As a general rule, an insurer's

duty to defend is triggered when "the allegations in the

plaintiff's complaint are reasonably susceptible of an

interpretation that the claim may be covered by the terms of the

insurance policy." Pitrolo, 342 S.E.2d at 160; see also Syl. Pt.

6, Farmers & Mechs. Mut. Ins. Co. of W. Va. v. Cook, 557 S.E.2d

801 (W. Va. 2001).

If any of the claims against the insured might trigger

coverage, the insurer must defend against all the claims asserted.

See Horace Mann Ins. Co. v. Leeber, 376 S.E.2d 581, 584 (W. Va.

---

[2] The parties agree that, pursuant to Erie Railroad Company v. Tompkins, 304 U.S. 64, 78 (1938), the substantive law of West Virginia governs the interpretation and application of the insurance policies at issue.

9

ALLSTATE VEHICLE & PROP. INS.                          1:21CV100
CO. v. PIXLER-DAVIS

MEMORANDUM OPINION AND ORDER
GRANTING SUMMARY JUDGMENT IN FAVOR OF THE PLAINTFFS

1988) (citing <u>Donnelly</u>, 589 F.2d at 765). Nevertheless, the insurer need not provide a defense if the claims against the insured are "entirely foreign to the risk insured against." <u>Air Force Ass'n v. Phoenix Ins. Co.</u>, No. 89-2317, 1990 WL 12677, at *2 (4th Cir. 1990) (citing <u>Donnelly</u>, 589 F.2d at 765).

The specific wording of an insurance policy determines whether it provides coverage for a particular claim. <u>See</u> <u>Beckley Mech. Inc. v. Erie Ins. Prop. & Cas. Co.</u>, 374 F. App'x 381, 383 (4th Cir. 2010); <u>Cherrington v. Erie Ins. Prop. & Cas. Co.</u>, 745 S.E.2d 508, 524 (W. Va. 2013). Indeed, "[l]anguage in an insurance policy should be given its plain, ordinary meaning." Syl. Pt. 8, <u>Cherrington</u>, 745 S.E.2d at 511 (internal quotations and citations omitted). Courts should not endeavor to interpret policy provisions unless they are unclear or ambiguous. <u>Id.</u> Instead, courts must give terms and provisions their meaning in the "plain, ordinary[,] and popular sense, not in a strained or philosophical sense." <u>Polan v. Travelers Ins. Co.</u>, 192 S.E.2d 481, 484 (W. Va. 1972); <u>see also</u> Syl. Pt. 9, <u>Cherrington</u>, 745 S.E.2d at 511.

10

ALLSTATE VEHICLE & PROP. INS.                                    1:21CV100
CO. v. PIXLER-DAVIS

**MEMORANDUM OPINION AND ORDER**
**GRANTING SUMMARY JUDGMENT IN FAVOR OF THE PLAINTFFS**

## A. House and Home Policies

Allstate first argues that its two House and Home Policies exclude coverage because the August 10, 2020 accident arose out of the Davises' business activity (Dkt. No. 31 at 17-21). The House and Home Policies include two pertinent types of coverage: (1) Family Liability Protection – Coverage X; and (2) Guest Medical Protection – Coverage Y (Dkt. Nos. 30-5 at 46-51, 30-6 at 42-47). Under Family Liability Protection – Coverage X, "[Allstate] will pay damages which an insured person becomes legally obligated to pay because of bodily injury or property damage arising from an occurrence to which this policy applies, and is covered by this part of the policy" (Dkt. Nos. 30-5 at 46, 30-6 at 42). However, Family Liability Protection – Coverage X excludes coverage for "bodily injury or property damage arising out of the past or present business activities of an insured person" (Dkt. Nos. 30-5 at 47, 30-6 at 43).

Similarly, under Guest Medical Protection – Coverage Y, "[Allstate] will pay the reasonable expenses incurred for the necessary medical, surgical, X-ray and dental services, ambulance, hospital, licensed nursing and funeral services, and prosthetic

11

ALLSTATE VEHICLE & PROP. INS.                                    1:21CV100
CO. v. PIXLER-DAVIS

MEMORANDUM OPINION AND ORDER
GRANTING SUMMARY JUDGMENT IN FAVOR OF THE PLAINTFFS

devices, eye glasses, hearing aids, and pharmaceuticals" (Dkt. Nos. 30-5 at 48, 30-6 at 44). But again, Guest Medical Protection – Coverage Y excludes coverage for "bodily injury arising out of the past or present business activities of an insured person" (Dkt. Nos. 30-5 at 49, 30-6 at 45). It further excludes coverage for "bodily injury to any person on the insured premises because of a business activity or professional service conducted there" (Dkt. Nos. 30-5 at 49, 30-6 at 45).

Each of Allstate's House and Home Policies defines business as "any full- or part-time activity of any kind engaged in for economic gain including the use of any part of any premises for such purposes" or "the rental or holding for rental of property by an insured person" (Dkt. No. 30-5 at 27, 30-6 at 23). This definition applies to both the Family Liability Protection – Coverage X, and the Guest Medical Protection – Coverage Y.

The facts in this case, when viewed in light of the plain and ordinary meaning of the business activities exclusion, lead the Court to conclude that no coverage is available to the defendants under these two Allstate policies. The Davises agreed to allow Duda's to sell produce on a portion of their property in exchange

12

ALLSTATE VEHICLE & PROP. INS.                                    1:21CV100
CO. v. PIXLER-DAVIS

### MEMORANDUM OPINION AND ORDER
### GRANTING SUMMARY JUDGMENT IN FAVOR OF THE PLAINTFFS

"for [the] economic gain" of $400 per month rent. Moreover, the plain and ordinary meaning of rent is "[c]onsideration paid, usu[ally] periodically, for the use or occupancy of property (esp. real property)." Rent, Black's Law Dictionary (11th ed. 2019). Permitting Duda's to use a portion of the property in exchange for a regular payment thus also constituted "the rental . . . of property." Accordingly, under either definition of business, the Davises' activities plainly qualify as business activities. And because the House and Home Policies exclude coverage for bodily injury arising out of the past or present business activities of an insured person, they do not provide coverage for damages resulting from the August 10, 2020 motor vehicle accident.[3]

**B. Umbrella Policy**

Allstate next contends that the Umbrella Policy issued by Allstate Indemnity Company does not provide coverage because the conditions triggering coverage have not been met (Dkt. No. 31 at 21-23). Alternatively, it again argues that the policy excludes

---

[3] Because both House and Home Policies exclude coverage for damages resulting from the August 10, 2020 motor vehicle accident, the Court need not decide whether the House and Home Policy for 508 Wheeling Street, Westover, West Virginia 26501 covered occurrences at the site of the accident on 707 Fairmont Road, Morgantown, West Virginia 26505.

ALLSTATE VEHICLE & PROP. INS.                                    1:21CV100
CO. v. PIXLER-DAVIS

**MEMORANDUM OPINION AND ORDER**
**GRANTING SUMMARY JUDGMENT IN FAVOR OF THE PLAINTFFS**

coverage because the Davises were engaged in a business activity.
Id. The defendants argue that, regardless of the underlying
insurance, the Umbrella Policy provides coverage once losses
surpass the underlying policy limits (Dkt. Nos. 32 at 17-19, 33 at
18-20).

     The Umbrella Policy contains the following coverages: (1)
Excess Liability Insurance – Bodily Injury and Property Damage
Coverage XL; and (2) Excess Liability Insurance – Personal Injury
– Coverage XP. Under Excess Liability Insurance – Bodily Injury
and Property Damage Coverage XL, two sections are pertinent to the
coverage dispute here.

     Section 1 of Excess Liability Insurance – Bodily Injury and
Property Damage Coverage XL provides:

> [Allstate] will pay damages which an insured
> person becomes legally obligated to pay
> because of bodily injury or property damage
> arising out of an occurrence that is both a
> loss we cover under Excess Liability Insurance
> – Bodily Injury and Property Damage – Section
> 1 of this policy and a covered loss under your
> Required Underlying Insurance policy.

(Dkt. No. 30-7 at 15).

14

ALLSTATE VEHICLE & PROP. INS.                          1:21CV100
CO. v. PIXLER-DAVIS

**MEMORANDUM OPINION AND ORDER**
**GRANTING SUMMARY JUDGMENT IN FAVOR OF THE PLAINTFFS**

Section 2 provides:

> [Allstate] will pay damages which an insured
> person becomes legally obligated to pay
> because of bodily injury or property damage
> arising only out of:
>
> > 1. a covered occurrence for which
> >    Required Underlying Insurance is not
> >    required by this policy; or
> >
> > 2. a covered occurrence for which you are
> >    required by this policy to maintain
> >    Required Underlying Insurance but
> >    there is no Required Underlying
> >    Insurance in effect at the time of the
> >    occurrence.

Id. at 16. Section 2 excludes coverage, however, for "any

occurrence arising out of a business or business property." Id. at

17. The General Provisions of the Umbrella Policy define business

as

> a. any full- or part-time activity of any
>    kind:
>
> > 1. arising out of or relating to an
> >    occupation, trade or profession of an
> >    insured person; and
> > 2. engaged in by an insured person for
> >    economic gain, including the use of
> >    any part of any premises for such
> >    purposes. . . .

15

ALLSTATE VEHICLE & PROP. INS.                              1:21CV100
CO. v. PIXLER-DAVIS

**MEMORANDUM OPINION AND ORDER**
**GRANTING SUMMARY JUDGMENT IN FAVOR OF THE PLAINTFFS**

> b.  the rental or holding for rental of any
>     property by an insured person.

Id. at 25.

The Required Underlying Insurance provision of the Umbrella Policy also provides in pertinent part that

> [y]ou must maintain at least the Required Underlying Insurance amount listed on the Policy Declarations for each residence you own, maintain or use. This liability coverage may be provided by either:
>
> 1.  a separate Comprehensive Personal Liability policy; or
>
> 2.  a Homeowners Insurance or similar package policy.

(Dkt. No. 30-7 at 14). The applicable Required Underlying Insurance amount listed on the policy declarations is $300,000. Id. at 4.

As the Court has already determined, there is no coverage under the Required Underlying Insurance, i.e., the House and Home Policies. The Umbrella Policy therefore does not provide coverage under Section 1. Moreover, under the plain and ordinary meaning of Section 2, coverage is only available for an occurrence "for which Required Underlying Insurance is not required" and "for which you are required by this policy to maintain Required Underlying

16

ALLSTATE VEHICLE & PROP. INS.                    1:21CV100
CO. v. PIXLER-DAVIS

**MEMORANDUM OPINION AND ORDER**
**GRANTING SUMMARY JUDGMENT IN FAVOR OF THE PLAINTFFS**

Insurance but there is no Required Underlying Insurance in effect at the time of the occurrence." And because underlying insurance was required for personal liability coverage in the form of homeowners insurance and was in effect at the time of the accident, the Umbrella Policy provides no coverage under Section 2.

Section 2 also specifically excludes coverage for business activities, including "the rental or holding for rental of any property by an insured person." As previously discussed, supra pp. 12-13, permitting Duda's to use a portion of the property in exchange for a regular payment plainly constituted "the rental . . . of property." Accordingly, the business activities exclusion precludes coverage under Section 2.

The defendants argue that, even if Allstate is correct, the Umbrella Policy provides coverage once losses exceed the policy limits of the Required Underlying Insurance. In support of this argument, they rely on the Required Underlying Insurance provision of the Umbrella Policy, which provides that "[i]f the underlying insurance applicable to the occurrence does not provide at least the limits required under [the Umbrella Policy], you will be

17

ALLSTATE VEHICLE & PROP. INS.                          1:21CV100
CO. v. PIXLER-DAVIS

### MEMORANDUM OPINION AND ORDER
### GRANTING SUMMARY JUDGMENT IN FAVOR OF THE PLAINTFFS

responsible for the damages up to the Required Underlying Insurance amount" (Dkt. No. 30-7 at 14).

But this provision addresses when the Umbrella Policy would potentially provide coverage if the Required Underlying Insurance did not provide coverage up to the amount listed on the Umbrella Policy's Policy Declarations. Contrary to the defendants' contention, it does not address whether the Umbrella Policy would in fact provide coverage above the limits required in the Policy Declarations. As discussed earlier, the portion of the policy relevant to that issue is found in Excess Liability Insurance – Bodily Injury and Property Damage Coverage XL - Sections 1 and 2, neither of which provides coverage under the circumstances of this case. Here, Section 1 does not provide coverage because the Required Underlying Insurance does not provide coverage, and Section 2 does not provide coverage because specific conditions were not met or, alternatively, because of the business activities exclusion.

### C. Ambiguity

Despite the plain and ordinary meaning of the House and Home Policies and the Umbrella Policy, the defendants urge the Court to

ALLSTATE VEHICLE & PROP. INS.                              1:21CV100
CO. v. PIXLER-DAVIS

MEMORANDUM OPINION AND ORDER
GRANTING SUMMARY JUDGMENT IN FAVOR OF THE PLAINTFFS

find an ambiguity in the policies' definitions of business and property (Dkt. Nos. 32 at 13-17, 33 at 13-18), and then to construe the policies to align with their reasonable expectations (Dkt. No. 33 at 21-23). Policy language is ambiguous if it "is reasonably susceptible of two different meanings or is of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning." Syl. Pt. 1, Prete v. Merchs. Prop. Ins. Co. of Indiana, 223 S.E.2d 441 (W. Va. 1976). But "[t]he mere fact that parties do not agree to the construction of a contract does not render it ambiguous," Syl. Pt. 4, W. Va. Fire & Cas. Co. v. Stanley, 602 S.E.2d 483 (W. Va. 2004), and "a court should read policy provisions to avoid ambiguities and not torture the language to create them." Payne v. Weston, 466 S.E.2d 161, 166 (W. Va. 1995).

**1. Definition of Business**

The defendants first contend that the definition of business is ambiguous because it differs between the House and Home Policies and the Umbrella Policy (Dkt. Nos. 32 at 13-15, 33 at 13-15). But Allstate asserts there is no ambiguity because the House and Home Policies and the Umbrella Policy are separate policies issued by different companies (Dkt. No. 34 at 7-11).

19

ALLSTATE VEHICLE & PROP. INS.                                    1:21CV100
CO. v. PIXLER-DAVIS

## MEMORANDUM OPINION AND ORDER
### GRANTING SUMMARY JUDGMENT IN FAVOR OF THE PLAINTFFS

In support of their argument, the defendants cite Gage County
v. Employers Mutual Casualty Co., 937 N.W.2d 863 (Neb. 2020), but
this reliance is unavailing. First, setting aside the fact that
Gage County is not controlling authority, a careful reading of the
opinion establishes that it fails to support the defendants'
position. In Gage County, where the term professional services was
undefined in the underlying insurance policy, the court looked to
definitions in another related insurance policy and an umbrella
policy to define the term. Id. at 873-875. Importantly, while the
court considered the policies as a whole, it never held, as the
defendants have argued here, that differences between the
definitions in the related policies created an ambiguity, but
rather concluded that the undefined term should be given a meaning
consistent with the definitions used in the other two policies.
Id. at 941-42. Here, in contrast, the term business is defined in
each of the three (3) policies at issue.

The defendants offer no authority in addition to Gage County
to support their argument that different definitions in separate
policies constitute an ambiguity. On the contrary, where, as here,
separate policies issued by separate companies include definitions

20

ALLSTATE VEHICLE & PROP. INS.                              1:21CV100
CO. v. PIXLER-DAVIS

### MEMORANDUM OPINION AND ORDER
### GRANTING SUMMARY JUDGMENT IN FAVOR OF THE PLAINTFFS

of business the Court concludes that each definition is not
"reasonably susceptible of two different meanings." Syl. Pt. 1,
Prete, 223 S.E.2d 441. Indeed, as "a court should read policy
provisions to avoid ambiguities," Payne, 466 S.E.2d at 166, the
definition of business in each policy "should be given its plain,
ordinary meaning." Syl. Pt. 8, Cherrington, 745 S.E.2d at 511
(internal quotations and citations omitted).

### 2. Definition of Property

The defendants next argue that the meaning of property in the
definition of business is ambiguous because property could refer
to real or personal property (Dkt. Nos. 32 at 15-17, 33 at 16-18).
Allstate contends there is no ambiguity because property
encompasses both real and person property (Dkt. No. 34 at 13-14).

The plain and ordinary meaning of property is "[a]ny external
thing over which the rights of possession, use, and enjoyment are
exercised." Property, Black's Law Dictionary (11th ed. 2019). Such
definition clearly includes both real and personal property. The
Court therefore declines to "torture the language to create [an
ambiguity]," Payne, 466 S.E.2d at 166, and concludes that property
refers to both real and personal property.

21

ALLSTATE VEHICLE & PROP. INS.                                    1:21CV100
CO. v. PIXLER-DAVIS

### MEMORANDUM OPINION AND ORDER
### GRANTING SUMMARY JUDGMENT IN FAVOR OF THE PLAINTFFS

In summary, the pertinent portions of the House and Home Policies and the Umbrella Policy are unambiguous, thereby precluding consideration of the defendants' argument regarding their reasonable expectations. Syl. Pt. 2, <u>State ex rel. Universal Underwriters Ins. Co. v. Wilson</u>, 825 S.E.2d 95 (W. Va. 2019).

### V. Conclusion

For the reasons discussed, the Court **GRANTS** the plaintiffs' motion for summary judgment (Dkt. No. 30) and **DENIES** the Claudio defendants' cross-motion for the same (Dkt. No. 32). It also **DENIES** the Claudio defendants' alternative motion to abstain (Dkt. No. 32).

It is so **ORDERED**.

The Clerk **SHALL** transmit copies of this Order to counsel of record, enter a separate Clerk's judgment, and remove this case from the Court's active docket.

DATED: August 9, 2022

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE